UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD J. HADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:11CV602 TIA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3)for judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.  Procedural History**

On July 23, 2007, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). (Tr. 65-75) In his applications, Plaintiff alleged disability beginning May 27, 2005 due to diabetes, bad blood circulation in feet, and bad eyesight. (Tr. 35, 65, 68)  Plaintiff's applications were denied on October 17, 2007, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 30-32, 35-42) On July 6, 2009, Plaintiff appeared and testified at a hearing. (Tr. 20-29) In a decision dated October 19, 2009, the ALJ determined that Plaintiff had not been under a disability from May 27, 2005 through the date of the decision. (Tr. 12-19) The Appeals Council denied Plaintiff's Request for Review on March 4, 2011. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel.  Upon questioning by his attorney, Plaintiff testified that he was 58 years old.  He weighed 190 pounds and measured 6 feet 2 inches tall.  Plaintiff lived in a house with his brother.  He did not complete the 7th grade, but stated that he did not have problems with reading or writing.  Plaintiff last worked in 2003 as a machine operator, a job which he performed for 5 years.  The job ended when the factory closed and moved to another location.  (Tr. 23-25)

Plaintiff testified that he was unable to work because he was diabetic.  He explained that his feet felt as if he was walking on bricks all the time, and he was unable to stand long or walk far.  In addition, Plaintiff had high blood pressure and Hepatitis C.  Plaintiff stated that he experienced pain in his feet when walking and that he could only walk about a block before becoming tired and short-winded from asthma.  He had an inhaler for his asthma symptoms.  Further, Plaintiff was unable to stand for more than 15 minutes.  Plaintiff did not have a driver's license or drive a car.  With regard to his Hepatitis C, Plaintiff testified that he had pain on his right side and had an appointment to see a doctor at Connect Care later that month.  In addition, Plaintiff stated that he was depressed because he could no longer work or do things he enjoyed.  He did not have crying spells but felt real depressed most of the time.  (Tr. 25-28)

Plaintiff further testified that he did not visit with friends or relatives but mostly stayed at home. He did not go to church or a social group but planned to start.  Plaintiff experienced problems falling asleep.  Around the house, he tried to clean up a little but could not do much.  Plaintiff needed to break up his chores because he became exhausted.  (Tr. 28-29)

At the close of the hearing, the ALJ noted that he would keep the record open for additional

2

records and that he would order a full psychological testing. (Tr. 29)

In a Function Report – Adult dated August 16, 2007, Plaintiff reported that throughout the day he sat and watched TV. He stated that his feet did not function well, and his eye sight was getting worse. He needed reminders to take care of personal needs because he tired easily. Plaintiff was able to prepare his own meals daily, but he would become tired quickly. He could perform light housework once a week, and he went outside every day. In addition, Plaintiff was able to shop for food; however, he did not shop because he had no income. Plaintiff could pay bills, handle a savings account, count change, and use a checkbook. His interests included watching TV everyday. However, his eyes were blurry. He further testified that he had not left the house in 4 months but that he talked with others. Since his condition began, Plaintiff was no longer able to lounge around with others. His poor circulation in his feet and worsening eye sight affected his ability to squat, bend, stand, walk, kneel, stair climb, and see. He stated that could walk 2 blocks before needing to rest for 15 minutes. He could pay attention for one hour. In addition, he could sometimes finish what he started. His ability to follow written and verbal instructions was sometimes good and sometimes not so good. Plaintiff was able to get along with authority figures and handle changes in routine pretty well. (Tr. 115-22)

In a Disability Report – Adult, Plaintiff reported that he became unable to work on May 27, 2005 and that he stopped working on November 15, 2006 because he was sick on the job and was sent home. In addition, he stated that the highest grade of school completed was the 12th grade and that he did not attend special education classes. (Tr. 124, 129)

3

### III.  Medical Evidence

Plaintiff was admitted to DePaul Health Center on May 26, 2005 and discharged the following day with a diagnosis of new-onset diabetes.  Plaintiff reported feeling poorly with low energy, increased thirst, and increased urinary output.  He also reported blurred vision.  Plaintiff stated that he smoked and occasionally drank alcohol.  Dr. Imran A. Hanafi treated Plaintiff with insulin, provided diabetes education, and instructed Plaintiff to follow up with his primary care physician.  (Tr. 175-76)

On June 6, 2005, Plaintiff presented to People's Health Center for newly diagnosed diabetes.  Plaintiff was prescribed Glucotrol XL 5 mg. daily and referred to a dental clinic and podiatrist.  (Tr. 192-3) Plaintiff returned to People's Health Center on February 6, 2006 for a diabetes follow up visit.  He complained of tingling in his left foot and blurred vision.  The examining physician noted that Plaintiff was out of medication and was not checking his blood sugar.  The physician diagnosed diabetes mellitus type II, uncontrolled; tobacco abuse; and hypertension.  (Tr. 190-91)

Dr. Sarwath Bhattacharya performed a consultative evaluation.  Plaintiff complained of polyuria, polyphasia, nocturia, blurred vision, and weight loss.  He also reported bad feet and difficulty walking.  Dr. Bhattacharya noted that Plaintiff was a poor historian.  Review of systems was negative.  Plaintiff's daily activities included doing light housework with grocery shopping, cooking, and laundry.  In addition, he cleaned dishes, mopped, vacuumed, and mowed the lawn.  Plaintiff reported that he could walk 5 blocks and stand for 45 minutes.  He was okay with sitting, could lift about 30 pounds, and was able to climb one flight of stairs.  Plaintiff smoked one pack of cigarettes a day and reported being an alcoholic.  He still drank occasionally.  In addition, Plaintiff admitted to taking marijuana, cocaine, "crack", and intravenous drugs, having last used in October of 2007.

4

Plaintiff was in no acute distress but had poor teeth repair.  He was unable to heel/toe walk due to calluses on his toes and fungated toenails.  Flexing and squatting was okay, and he had no difficulty getting on or off the exam table.  His gait was normal, and he had good range of motion of the upper and lower extremities.  Dr. Bhattacharya assessed type II diabetes mellitus and noted that Plaintiff was not taking medication due to financial constraints and was non-compliant multiple. times.  Dr. Bhattacharya also assessed multiple calluses over both feet with onychomycoses bilateral and fungated skin changes between his toes; tobacco addiction; alcohol abuse; and substance abuse with sclerosis of the veins in the upper extremities.  (Tr. 198-201)

Plaintiff was treated at Grace Hill Neighborhood Health Center on March 20, 2008 for bronchitis, increased blood sugars, and peripheral neuropathy.  (Tr. 227-29)   He returned to the clinic on May 12, 2008 for a follow up visit.  (Tr. 224-26)

Treatment notes from May 27, 2008 revealed diabetes, hepatitis C, and atypical chest pain. (Tr. 223)  On June 3, 2008, Plaintiff was diagnosed with hypertension, chest pain, and diabetes. (Tr. 222)  Plaintiff presented for a follow up exam on July 28, 2008.  He had no chest pain or swelling but reported shortness of breath with rest and speaking.  He continued to drink alcohol and smoke, and the examiner encouraged Plaintiff to quit.  Diagnoses included hypertension, diabetes, and hepatitis C.  (Tr. 221) When Plaintiff returned on August 4, 2008, he had no complaints.  He denied chest pain, swelling, shortness of breath, or dizziness.  (Tr. 220)

On August 22, 2008, Plaintiff underwent a myocardial radionuclide imaging, perfusion, tomography. The test revealed small, mild inferoapical ischemia and mild left ventricular enlargement with normal systolic function.  (Tr. 216)   A pharmacologic nuclear stress test (ECG) conducted on that same date was negative for ischemia.  (Tr. 214-15)

5

During an office visit on November 20, 2008, Plaintiff reported that he continued to smoke a pack of cigarettes a day and drink alcohol twice a month.  His blood pressure was elevated and he was encouraged to keep his cardiology and hepatology appointments.  (Tr. 219) On February 17, 2009, Plaintiff presented for a follow up on hypertension and diabetes.  He complained of numbness in his toes and headaches.  (Tr. 217)

On August 7, 2009, Thomas J. Spencer, Psy.D., performed a psychological evaluation of Plaintiff to assist in his disability determination.  Plaintiff's chief complaint was that he was diabetic and hepatitis C.  He reported chronic fatigue and pain in his feet.  He acknowledged that his condition was poorly controlled.  Plaintiff noted a history of alcohol abuse but stated he was three months sober.  His longest periods of sobriety had been when he was imprisoned, which he described as 16 years in and out of prison.  He also had habitually used cocaine, heroin, and marijuana, but he reported that he had not used drugs in a year.  Plaintiff further stated that he was depressed all the time, often irritable and short-tempered, and forgetful.  Plaintiff spent the day watching TV and helping "some" around the house and with meal preparation.  (Tr. 260-61)

Dr. Spencer noted that Plaintiff did not appear to be in physical distress but walked with a cane.  He was cooperative, but his insight and judgment were questionable.  Plaintiff's Full Scale IQ score was 72, which placed him in the Borderline range of intellectual functioning.  On memory functioning, his General Memory Index was 74, which was almost two standard deviations below the mean.  Auditory and Visual Immediate, as well as Auditory and Visual Delayed, were Borderline.  His Working Memory Index was also Borderline.  Plaintiff's Auditory Recognition was Average.  TMT measuring speed for attention, sequencing, mental flexibility, and visual search and motor function was three standard deviations from the mean.  In addition, Dr. Spencer noted that individuals

with Plaintiff's Personality Functioning code type often complain of depression, anxiety, insomnia, fatigue, weakness, mental confusion, and difficulty concentrating. Further, these individuals felt withdrawn, alienated, tense, and jumpy, with low motivation to achieve and a likelihood of apathy and indifference. They were suspicious and sensitive to criticism, as well as resentful, unassertive, dependent, and irritable. (Tr. 262-63)

Dr. Spencer diagnosed depressive disorder NOS; alcohol dependence, early remission; polysubstance abuse, sustained remission; rule out major depressive disorder; rule out cognitive disorder; occupational problems; economic problems; and a GAF of 50-55. Further, based upon available information, Plaintiff did not appear capable of managing his benefits without assistance due to his extensive history of substance abuse. (Tr. 263-64)

Dr. Spencer also completed a Medical Source Statement, noting mild limitations to Plaintiff's ability to understand and remember simple instructions and carry out simple instructions. He had moderate limitations in his ability understand and remember complex instructions and marked limitations in his ability to understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. Further, his ability to interact appropriately with the public, supervisors, and co-workers was mildly limited. Plaintiff was moderately limited in his ability to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 257-59)

### IV.  The ALJ's Determination

In a decision dated October 19, 2009, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009. Plaintiff had not engaged in substantial gainful activity since May 27, 2005, the alleged onset date. Further, Plaintiff had the

severe impairment of diabetes mellitus. His mental impairment of depression did not cause more than a minimal limitation on his ability to perform basic mental work activities and was not severe. In making this determination, the ALJ considered section 12.00C of the Listing of Impairments, known as "paragraph B" criteria. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15)

After consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. Further, the ALJ found that Plaintiff was capable of performing his past relevant work as a fork lift driver, which did not require the performance of work-related activities precluded by Plaintiff's RFC. Thus, the ALJ concluded that Plaintiff had not been under a disability from May 27, 2005 through the date of the decision and was not disabled under the Social Security Act. (Tr. 15-19)

## V.  Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work

activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record *de novo*. Id. at 1328 (citing Robert v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set

forth the inconsistencies in the record.  Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence.  Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible.  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion.  Marciniak , 49 F.3d at 1354.

## VI.  Discussion

Plaintiff raises two arguments in his brief in support of the complaint.  First, Plaintiff contends that the ALJ failed to point to "some" medical evidence to support the RFC determination.  Second, Plaintiff asserts that the ALJ failed to properly consider the significant nonexertional mental impairments in finding that Plaintiff was capable of performing his past relevant work.  The Defendant, on the other hand, maintains that the ALJ properly determined Plaintiff's RFC and properly found he could perform his past relevant work.

---

[1] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

10

## A.  RFC Analysis

The Plaintiff first argues that the ALJ failed to conduct a proper RFC analysis because the ALJ's did not consider all the medically determinable impairments, did not properly consider the Listing of Impairments, and did not point to "some" medical evidence in support of the RFC finding. Specifically, the Plaintiff contends that the ALJ erroneously found that Plaintiff had only the severe impairment of diabetes mellitus and that Plaintiff's impairment of depression was not severe. Plaintiff also contends that the ALJ overlooked Plaintiff's low IQ score. Defendant, on the other hand, contends that the RFC assessment was properly based on the overall record of evidence. The undersigned finds that the ALJ properly determined that Plaintiff's mental impairments were not severe and properly conducted the RFC analysis.

Residual Functional Capacity (RFC) is a medical question, and the ALJ's assessment must be supported by substantial evidence. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 416.945(a)(1).

Here, the ALJ found that Plaintiff had the severe impairment of diabetes mellitus. The record shows that Plaintiff was treated primarily for diabetes-related symptoms. He did not allege depression or any other mental impairment during any of his office visits. Further, the opinion of Dr. Spencer was not entitled to controlling weight, as he was a consultative examiner. See Clark v. Apfel, 141 F.3d 1253, 1256 (8th Cir. 1998) (finding that low IQ scores resulting from plaintiff's first and only evaluation by a non-treating psychologist was not entitled to controlling weight). Instead, the ALJ noted that Plaintiff's intellectual functioning did not prevent him from working as a machine operator or forklift operator, nor did the evidence demonstrate that he required special education services for

11

a learning difficulties.  (Tr. 18)  Plaintiff testified that he had no problems reading or writing.  (Tr. 17)  Further, Plaintiff was capable of performing household chores.  (Tr. 16)  These reasons are sufficient for the ALJ to find that Plaintiff's low IQ scores were inconsistent with the record.  See Id. (concluding that substantial evidence in the record supported the Commissioner's decision where the plaintiff's low IQ scores were inconsistent with her daily functional abilities, her ability to read and write, and the lack of any suspected intellectual impairment in other medical records).

Additionally, Plaintiff's IQ score does not meet a listing.  Under section 12.05C of the Listing of Impairments:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.  The Eighth Circuit Court of Appeals "has interpreted Listing 12.05C to require a claimant to show each of the following three elements: '(1) a valid verbal, performance, or full scale IQ score of 60 through 70, (2) an onset of the impairment before age 22, and (3) a physical or other mental impairment imposing an additional and significant work related limitation of function.'" McNamara v. Astrue, 590 F.3d 607, 610-11 (8th Cir. 2010) (quoting Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006)).  Defendant correctly notes that Plaintiff has failed to meet this requirement.

First, while Plaintiff's performance IQ was 70, Dr. Spencer stated that the score seemed a bit

12

low, as Plaintiff seemed to function in the low average range of abilities. (Tr. 262) Indeed, the ALJ noted that Plaintiff was able to work for a number of years with his intellectual functioning. (Tr. 18) Second, nothing in the record suggests that Plaintiff required special education services or had any type of learning disability prior to age 22. Plaintiff stated in his disability report that he graduated from high school and did not attend special education classes, and he testified that he had no problems with reading or writing. (Tr. 24, 129) In addition, none of Plaintiff's physicians mentioned subaverage intellectual functioning in any of the medical reports. The fact that nothing in Plaintiff's medical records indicates a suspicion of mild mental retardation is significant in weighing the reliability of Plaintiff's IQ scores. Clark, 141 F.3d at 1256.

Likewise, Plaintiff is unable to meet the criteria required in Listing 12.05D, which requires a valid verbal, performance, or full scale IQ of 60 to 70 and at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05D. The ALJ considered Plaintiff's functional limitations and found mild limitations in activities of daily living; no limitations in social functioning; mild limitation in concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. 15) Thus, Plaintiff's intellectual functioning did not meet the requirements of Listing 12.05D. Because the Plaintiff is unable to satisfy the elements of Listings 12.05C and D, the ALJ correctly determined that Plaintiff's intellectual functioning was not severe.[2]

---

[2] Plaintiff also contends that the ALJ failed to properly consider whether Plaintiff's impairments met Section 12.05 of the Listing of Impairments. While the ALJ did not explicitly state that he considered Listing 12.05, review of the opinion demonstrates that the ALJ

Plaintiff also contends that the ALJ erred because "some" medical evidence does not support the RFC determination that Plaintiff could perform light work. Plaintiff relies solely on the consultative examination by Dr. Spencer for this proposition. As previously stated, Dr. Spencer's opinion is not entitled to controlling weight. In addition, medical evidence does support the ALJ's determination. The record demonstrated that Plaintiff was not significantly limited by mental impairments. Plaintiff had never sought treatment for mental impairments, nor had he even complained to treating physicians that he suffered from depression or learning disabilities. See Banks v. Massanari, 258 F.3d 820, 826 (8th Cir. 2001) (finding substantial evidence supported the ALJ's finding that depression did not impose significant limitations to plaintiff's ability to work where her allegations were inconsistent with her failure to seek psychiatric treatment); see also Gowell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001) (concluding that working for years with the alleged mental impairments and failure to seek psychiatric treatment supported the ALJ's finding that plaintiff's alleged mental impairments were not severe). Thus, the ALJ properly relied on the medical evidence to find that Plaintiff's sole severe impairment was diabetes. The ALJ's RFC determination reflects this finding and is supported by medical evidence. (Tr. 16-18)  Therefore, the undersigned finds that substantial evidence supports the ALJ's decision that Plaintiff has the RFC to perform the full range of light work.

### B.  Past Relevant Work

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff could return to his past

---

considered and assessed Plaintiff's allegations under both 12.05C and D, and he concluded that Plaintiff did not meet the Listings. (Tr. 15, 18)  Failure to elaborate on this conclusion "does not require reversal, because the record supports [the ALJ's] overall conclusion." Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006).

relevant work because the ALJ did not consider the significant nonexertional mental impairments. Defendant maintains that the ALJ properly articulated Plaintiff's RFC and properly compared the RFC with the demands of Plaintiff's past work as he described it. Thus, Defendant asserts that the ALJ properly found Plaintiff could return to his past relevant work as a forklift driver.

The undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff is capable of performing his past relevant work as a forklift driver. The record shows that the ALJ relied on Plaintiff's own reports indicating that he performed several of his forklift driving jobs at the light exertional level. (Tr. 18, 107-13) The Eighth Circuit requires the ALJ to "make explicit findings on the demands of claimant's past work." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citation omitted). The ALJ may rely on the plaintiff's description of past work as he or she performed it to determine the demands of past relevant work. Id. Although the ALJ did not fully articulate the requirements of Plaintiff's past work in the opinion, he did incorporate Plaintiff's work history report as constituting the demands of his jobs as a forklift driver and found the demands were consistent with light work.[3] Such a determination is sufficient to constitute substantial evidence that Plaintiff can return to his past relevant work as a forklift driver. See Clark v. Astrue, No. 10-3512-CV-S-RED, 2012 WL 625111, at *5 (W.D. Mo. Feb. 24, 2012) (finding that the ALJ did not err in

---

[3] Plaintiff relies on Pfitzner v. Apfel, 169 F.3d 566, 568-9 (8th Cir. 1999) in support of his argument that the ALJ erred by failing to specifically set forth the mental and physical demands of Plaintiff's past relevant work and determine how the limitations affected Plaintiff's RFC. The undersigned finds that this case is inapposite. In Pfitzner, the ALJ did not specifically articulate plaintiff's RFC, instead describing it in general terms. Id. at 568. Here, the ALJ noted that Plaintiff had the capacity to lift and carry 10 pounds and occasionally lift and carry up to 20 pounds; walk and stand as necessary to perform the full range of light work.
(Tr. 17) The ALJ then compared this RFC determination with Plaintiff's own job descriptions as a forklift driver, some which required lifting no more than 20 pounds. (Tr. 18, 108, 110) The undersigned finds that the ALJ provided sufficient detail and analysis in concluding that Plaintiff could perform his past relevant work.

finding that plaintiff could perform his past relevant work as a custodian where the ALJ incorporated the demands of the past work in the opinion, found the demands consistent with medium work, found that the DOT listed the job of custodian as medium work, and determined Plaintiff could perform his past relevant work).

Further, as stated above, the ALJ properly found that Plaintiff's alleged mental impairments were not severe and did not have more than a minimal effect on his ability to function in the workplace. The record demonstrates that Plaintiff could perform the mental demands of a forklift driver, as he had previously held those positions while allegedly mentally impaired. Indeed, Plaintiff does not contend that his alleged mental impairments caused any job losses. Therefore, substantial evidence supports the ALJ's determination that Plaintiff is capable of performing his past relevant work as a forklift driver and is not disabled. Miles v. Barnhart, 374 F.3d 694, 700 (8th Cir. 2004) (upholding the ALJ's determination that Plaintiff could return to her past relevant work where she had worked and had not been terminated because of work-related mental impairments). Thus, the final decision of the Commissioner will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**.   A separate Judgment in accordance with this Memorandum and Order is entered this same date.


/s/ Terry I. Adelman<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2012.